IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **NATIONAL INK AND STITCH, LLC**<br><br>**Plaintiff,**<br><br>v.<br><br>**STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY**<br><br>**Defendant.** | **CASE NO.: 1:18-cv-02138-SAG** |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant, State Auto Property and Casualty Insurance Company, by and through its undersigned counsel, Timoney Knox, LLP, hereby submits the instant Memorandum in Support of Motion for Summary Judgment pursuant to Local Rule 105(1).

**I.   STATEMENT OF UNDISPUTED FACTS**

**A. THE POLICY**

State Auto issued a businessowners insurance policy, number BOP2870198, to Plaintiff for the period from March 31, 2017 through March 31, 2018 (the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit "A."

Subject to certain terms, conditions, limitations and exclusions, the Policy provides coverage for "direct physical loss of or damage to Covered Property," including Plaintiff's Business Personal Property, that is caused by or results from a Covered Cause of Loss. *See* Exhibit "A," Form BP0002 (12/99), p. 1 of 23. Under the Businessowners Special Property Coverage Form, defines Business Personal Property as, *inter alia*, property owned by the Plaintiff that is used in its business. *See* Exhibit "A," Form BP0002 (12/99), p. 1 of 23. However, under the Policy's Businessowners Special Form Computer Coverage Form, the aforementioned definition

is replaced, and Business Personal Property is redefined as Electronic Data Processing Equipment and Electronic Media and Records.  *See* Exhibit "A," BP0434C (01/97), p. 1 of 2.

### B. PLAINTIFF'S BUSINESS AND THE RANSOMWARE EVENT

Plaintiff operates an embroidery and screen printing business at 7610 Meadow Run Lane, Owings, Maryland 20736 (the "Property").  *See* Amended Complaint [ECF No. 4], ¶ 2.  *See also* Transcript of the Deposition of Timothy Manley ("N.T."), attached hereto as Exhibit "B," pp. 22-24.  As part of its business, Plaintiff has various pieces of equipment, including embroidery machines, screen printing presses, digital paper printers, and computers, which were used to run the equipment.  N.T., p. 16. Plaintiff considers the files stored on its server to be its "intellectual property." *Id.*, p. 131.

On or around December 8, 2016, one of Plaintiff's employees, Nissa Terrell ("Terrell") attempted to access a PDF file on the system and received a "pop-up" message saying that all of the files had been "locked."  N.T., pp. 51, 59.  Terrell notified Plaintiff's principal, Timothy Manley ("Manley") of the issue.  *Id.*, p. 52.  Manley attempted to open a different PDF file, receiving the same "pop up" message.  *Id.*  Manley believed that the system had been affected by ransomware, which affected "regular" file types, like PDF, JPEG, Bitmap and PNG files, but had not affected specialty file types, like embroidery files. *Id.*, pp. 52-53, 55.  The ransomware did not affect any part of Plaintiff's computer system other than the electronic data.  *Id.*, p. 56. Plaintiff was still able to operate its business while the files were encrypted.  *Id.*, p. 63.

Through Facebook, Manley located Brad Hoffmaster of "Brad's On Call" Computer Support ("Hoffmaster").  N.T., p. 55.  Manley advised Hoffmaster that he had removed the ransomware from the system, but was unable to access the encrypted files.  A true and correct copy of the messages exchanged between Manley and Hoffmaster is attached hereto as Exhibit "C."

Hoffmaster attempted to decrypt files, but was ultimately unsuccessful. N.T. p. 56. *See also* Exhibit "C."

Tom Blandford of eTrepid, Inc. also responded to Manley's Facebook message and sent one of his employees, Ian Allen ("Allen"), to the Property the following day to attempt to decrypt Plaintiff's files. N.T., pp. 55, 61-62. Allen attempted to decrypt the files while Plaintiff continued to operate its business. *Id.*, pp. 63-64. While Allen was working, Plaintiff's internet access was disabled, but Plaintiff's computer system was still operational. *Id.*, pp. 65-66. Allen did not give Manley any instructions limiting his use of the computer system. *Id*.

On the evening of December 9, 2016, on Allen's advice, Manley elected to pay the ransom to regain access to his files. *Id.*, pp. 69-72. Allen sent the Bitcoin to the ransomers and was provided an executable file for the decryption tool. *Id.*, p. 70. However, the ransomers would only provide the configuration file for the tool if Plaintiff paid another Bitcoin. *Id.*, p. 73. Accordingly, Manley purchased another Bitcoin, which was sent to the ransomers. *Id.*, p. 74. Rather than send the configuration file, the ransomers requested additional Bitcoin. *Id*. Plaintiff refused to make any further Bitcoin payments. *Id.*, pp.74, 76.

After Plaintiff stopped making Bitcoin payments, technicians from eTrepid began installing security measures on Plaintiff's computer system to prevent another ransomware event. N.T., pp. 78-79. After the security measures were installed, Plaintiff was permitted to resume using its computer system. *Id*. p. 80. Plaintiff's computer system continued to function after Plaintiff resumed use. N.T., pp. 80-81. Plaintiff has been able to accommodate new orders. *Id.*, p. 107. Other than a lack of efficiency caused by the slowness attributable to the security measures put in place by eTrepid, Plaintiff's ability to perform its business operations is not any different now than it was prior to the ransomware event. *Id.*, pp. 107-108.

At no time since the ransomware event was Plaintiff's business ever required to close because the ransomware, nor has Plaintiff ever had to refuse work from a customer because of the ransomware event. N.T., p. 132.

### C. THE CLAIM

On December 16, 2016, Plaintiff presented a claim to State Auto in connection with the ransomware event, seeking replacement of its entire computer system. *See* Amended Complaint [ECF No. 4], ¶¶ 11-12. Hartford Steam Boiler Inspection and Insurance Company ("HSB"), through a reinsurance agreement with State Auto, investigated the Claim under the Policy's Data Compromise Plus Coverage and determined that no personal data compromise had occurred. However, because there was reason to suspect such a compromise may have occurred, State Auto, pursuant to its reinsurance agreement with HSB, issued payment of $5,000, the limit of coverage under that Coverage, for Plaintiff's costs in assessing the ransomware event with eTrepid. *See* HSB Coverage Position Letter, a true and correct copy of which is attached hereto as Exhibit "D."

On December 16, 2017, State Auto denied coverage for the cost of replacing Plaintiff's computer system, because such replacement would be considered a preventative measure, not the result of direct physical damage to the computer hardware. *See* Declination Letter, a true and correct copy of which is attached hereto as Exhibit "E."

Two months later, on February 19, 2018, Plaintiff, through counsel, requested that State Auto reconsider is coverage denial. *See* February 19, 2018 Letter from Counsel, a true and correct copy of which is attached hereto as Exhibit "F." After reviewing the file, State Auto reiterated its coverage denial on April 4, 2018. *See* April 4, 2018 Letter from State Auto, a true and correct copy of which is attached hereto as Exhibit "G." This litigation followed.

## II. QUESTIONS PRESENTED

A. Whether State Auto is entitled to judgment as a matter of law where the Policy does not provide coverage for Plaintiff's reported loss because the ransomware event does not constitute direct physical loss to Covered Property.

*Suggested Answer: Yes.*

## III. ARGUMENT

### A. STANDARD OF REVIEW

Summary judgment should be granted when the materials of record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  *See also Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)(recognizing that trial judges have an affirmative obligation to keep unsupported claims and defenses from advancing to trial).

When both parties file motions for summary judgment, the Court applies this same standard. *See McCready v. Standard Ins. Co.,* 417 F. Supp. 2d 684, 695 (D. Md. 2006) (citing *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991)). The Court must consider each motion "separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003).

### B. RELEVANT PRINCIPLES OF INSURANCE POLICY INTERPRETATION

An insurance policy is a contract and, as such, is construed subject to the principles of contract interpretation. *People's Ins. Counsel Div. v. State Farm Fire & Cas. Ins. Co.*, 214 Md. App. 438, 453, 76 A.3d 517, 526 (2013).  In this context, an insurance policy must be viewed as a whole, without emphasis being placed on particular provisions. *Id.* (quoting *Empire Fire and Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md. App. 72, 96, 699 A.2d 482 (1997)). Each clause, sentence, or provision must be given force and effect. *Id*.

In construing specific words or terms in an insurance contract, a court must give them their "customary, ordinary, and accepted meaning." *Lloyd E. Mitchell, Inc. v. Md. Cas. Co.*, 324 Md. 44, 56, 595 A.2d 469 (1991). The court may construe the unambiguous terms of an insurance contract as a matter of law. *MAMSI Life & Health Ins. Co. v. Callaway*, 375 Md. 261, 279, 825 A.2d 995 (2003).

### C. STATE AUTO IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE RANSOMWARE EVENT DOES NOT CONSTITUTE DIRECT PHYSICAL LOSS TO COVERED PROPERTY.

The Policy provides coverage for "direct physical loss of or damage" to Covered Property, caused by or resulting from a Covered Cause of Loss. *See* Exhibit "A," Form BP0002 (12/99), p. 1 of 23. In the context of Plaintiff's computer system, Covered Property is defined as Electronic Data Processing Equipment and Electronic Media and Records. *See* Exhibit "A," BP0434C (01/97), p. 1 of 2. Plaintiff seeks replacement of its entire computer system. The Policy simply does not provide coverage for this cost under these facts.

The Policy's clear and unambiguous language requires the existence of a <u>physical</u> loss to Plaintiff's computer system. The files on Plaintiff's server are intangible, and, as such, as not susceptible to physical loss. *See Ward Gen. Ins. Services, Inc. v. Employers Fire Ins. Co.*, 7 Cal.Rptr. 3d 844 (Cal.App. 2003). *See also*, *Seagate Technology, Inc. v. St. Paul Fire and Marine Ins. Co.*, 11 F.Supp.2d 1150 (N.D.Cal. 1998); *America Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F.Supp.2d 459 (E.D.Va. 2002).

In *Ward*, the insured's electronic data was deleted from its computer systems due to human error during a system upgrade. *Ward*, 7 Cal.Rptr. 3d at 846. Interpreting identical policy language, the *Ward* Court held that, under ordinary principles of policy interpretation, the term "direct physical loss" required physical damage to covered property. *Id*., at 849. Under this interpretation, the *Ward* Court reasoned:

7

> The word "physical" is defined, inter alia, as "having material existence" and "perceptible esp. through the senses and subject to the laws of nature." (Merriam-Webster's Collegiate Dict. (10th ed. 1993) p. 875.) "MATERIAL implies formation out of tangible matter." (*Id.* at p. 715.) "Tangible" means, inter alia, "capable of being perceived esp. by the sense of touch." (*Id.* at p. 1200.) Thus relying on the ordinary and popular sense of the words, we say with confidence that the loss of plaintiff's database does not qualify as a "direct physical loss," *unless* the database has a material existence, formed out of tangible matter, and is perceptible to the sense of touch.

*Ward*, at 850. The Court went on to observe that electronic data, as distinguished from its storage medium, does not have a material existence, is not formed out of tangible matter, and is not perceptible to the sense of touch. *Id.*, p. 851. Consequently, the *Ward* Court held that loss of electronic data, with no damage to tangible property, does not constitute a "direct physical loss." *Id.*

*Ward* is directly on point under the facts of this case. The only loss suffered by Plaintiff was the inability to access the information stored on its server. N.T., pp. 56, 131. Plaintiff's computer system, its *tangible* property, has not sustained any damage. Rather, the system has continued to operate since the ransomware event, allowing Plaintiff to continue to operate its business without interruption. *See* N.T., pp. 80-81, 107-108, 132. As Plaintiff's inability to access its electronic data is not a result of damage to its tangible property, Plaintiff has not sustained a direct physical loss to Covered Property. *See Ward, supra.* As such, the Policy does not provide coverage for the Claim.

It is anticipated that Plaintiff will rely on *American Guar. & Liab. Ins. Co. v. Ingram Micro, Inc.*, 2000 U.S. Dist. LEXIS 7299 (D.Az. April 19, 2000); *Ashland Hospital v. Affiliated FM Ins. Co.*, 2013 U.S. Dist. LEXIS 11730 (E.D.Ky. Aug. 14, 2013); *Lambrecht & Assocs., Inc. v. State Farm Lloyds*, 119 S.W.3d 16 (Tex. 2013); and *NMS Services Incorporated v. The Hartford*, 62

Fed.Appx. 511 (4th Cir. 2003) to argue that the Plaintiff's computer system sustained a direct physical loss. Plaintiff's reliance on these cases would be misplaced; they are consistent with *Ward*, *supra*, and support State Auto's coverage declination.

In *Ingram Micro*, *supra*, after a power outage, the insured's computer system lost programming information, which rendered the system inoperable and prevented the insured from conducting business. *See Ingram Micro*, at *4. The court found these circumstances sufficient to create a direct physical loss to the insured's computer system. *Id.*, at *6. Similarly, in *Lambrecht & Assocs.*, *supra*, the court found a directly physical loss when a computer virus stopped the insured's computer system from functioning. 119 S.W.3d at 25. Likewise, in *NMS Servs.*, *supra*, the court held that a direct physical loss existed where an employee deleted electronic data from the insured's computer system, which prevented operation of the insured's manufacturing, sales, and administrative systems.

Here, Plaintiff's computer system remained functional and Plaintiff was not prevented from conducting business after the ransomware event, and, therefore, there is no basis for finding that Plaintiff's computer system suffered a direct physical loss.

In *Ashland Hospital*, *supra*, the insured's computer system was exposed to excessive heat when the air conditioning equipment in the data center failed. This excessive heat cause several components of the system to fail, which caused the system to become less reliable. *Id.*, *3-4. Consistent with *Ward*, the court found that the loss of reliability stemming from the physical damage caused by the heat exposure constituted a direct physical loss. *Id.*, *22-24. *Ashland Hospital* has no application to the instant case, where Plaintiff concedes that his computer equipment was not damaged.

Under the facts of this case, there is no basis for this Court to find that Plaintiff suffered a direct physical loss since, by Plaintiff's own admission, the ransomware had no effect beyond limiting access to intangible electronic data. None of Plaintiff's computer equipment lost functionality, and Plaintiff has never been prevented from operating its business.

Because Plaintiff has not suffered a direct physical loss to its computer system, no coverage is available for Plaintiff's Claim, and State Auto is entitled to judgment as a matter of law.

## IV.   CONCLUSION

Based on the foregoing, Defendant, State Auto Property and Casualty Insurance Company, respectfully requests that this Honorable Court enter summary judgment in its favor.

    Respectfully submitted,

    **TIMONEY KNOX, LLP**

By:   s/Matthew B. Malamud
MATTHEW B. MALAMUD, ESQUIRE
400 MARYLAND DRIVE
FORT WASHINGTON, PA 19043
215-646-6000
215-646-0379 (fax)
mmalamud@timoneyknox.com
*Attorney for Defendant*
*State Auto Property and Casualty Insurance Company*

Dated: November 1, 2019