IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL INK AND STITCH, LLC,   *
7610 Meadow Run Lane
Owings Mills, MD 20736   *

      Plaintiff,   *

                                Civil Action No. 18-cv-2138-CCB

       *
v.
       *
STATE AUTO PROPERTY AND
CASUALTY INSURANCE   *
COMPANY
       *

      Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN REPLY TO OPPOSITION OF DEFENDANT STATE AUTO TO NATIONAL INK & STITCH, LLC'S CROSS-MOTION FOR SUMMARYJUDGMENT AND IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

    Plaintiff National Ink & Stitch, LLC, by its undersigned attorney, submits this memorandum in reply to Defendant State Auto Property and Casualty Insurance Company's Opposition to Plaintiff's Cross-Motion for Summary Judgment on the issue of whether National Ink & Stitch suffered a "direct physical loss" to "Covered Property" as a result of the ransomware attack it suffered in December 2016.

    State Auto has consistently taken the position that there was no "direct physical loss" to Plaintiff's computer system because the actual hardware could still be operated, that the only component of that system that was damaged by the ransomware attack was the software and programs installed on the file server of the computer system, and that such data and software is "intangible" and, thus, cannot suffer "physical loss." However, the effects of the ransomware

attack caused a "direct physical loss" because that attack **either** caused a loss of functionality of the computer system **and/or** because the data corrupted or damaged by the ransomware virus is, itself, tangible property irrespective of whether the computer hardware was physically damaged. State Auto does not dispute that its own policy includes such data and software as "Covered Property" that can be subject to "direct physical loss or damage." Despite this, State Auto stakes out its narrow position that such data and software is "intangible" and, thus, cannot suffer "direct physical loss," based on *Ward General Insurance Services, Inc. v. Employers Fire Insurance Co.*, 7 Cal. Rptr. 3d 844 (Cal. App. 2003).

In responding to the authorities cited and discussed in Plaintiff's initial memorandum in support of its cross-motion for summary judgment, State Auto argues that the cases cited as support for Plaintiff's position that a "loss of functionality = direct physical loss" actually are consistent with *Ward*. As explained below, they are not. Beyond this, State Auto did not even mention the cited cases holding that computer data is, itself, tangible property, other than to attempt to distinguish *Comptroller of the Treasury v. Equitable Trust Company*, 296 Md. 450, 464 A. 2d 248 (1983).

Whether the damage to the data caused a loss of functionality of the computer system or whether the data is, itself, tangible or physical, Plaintiff is entitled to summary judgment that it did suffer a "direct physical loss," as that term is used in the applicable State Auto policy, resulting from the ransomware attack.

### A. The better-reasoned authorities establish that a loss of functionality of the computer system, even if was not rendered totally inoperable, is a "direct physical loss."

Plaintiff's original memorandum cited and discussed several cases which held, under circumstances similar to those at issue here, that the loss of functionality of a computer system, by the loss or corruption of the data or software stored on that computer system, was a "direct physical loss" under the first party insurance coverage at issue in those cases. In its opposition memorandum, State Auto addresses only two of those cases, *American Guaranty & Liability Ins. Co. v. Ingram Micro, Inc.*, 2000 WL 726789 (D. Az. 2000), and *Ashland Hospital Corporation v. Affiliated FM Insurance Company*, 2013 WL 4400516 (E.D. Ky. 2013), asserting that they are, in fact, consistent with *Ward* purportedly because they required actual physical damage to computer hardware before "loss of functionality" could constitute "direct physical loss" to covered property. State Auto does not even mention *Southeast Mental Health Center, Inc. v. Pacific Insurance Company, Ltd.*, 439 F. Supp. 2d 831 (W.D. Tenn. 2006), much less try to distinguish it.

State Auto's effort to explain away the true import of *Ingram Micro* should be unavailing. The court's decision in that case did not rest on a finding of physical damage to the computer hardware, as urged by the insurer, the same position taken by State Auto here. The *Ingram Micro* court sided with the insured's broader definition of "physical damage," expressly holding that "physical damage is not restricted to the physical destruction or harm of computer circuitry but includes loss of access, loss of use, and loss of functionality." In so holding the court noted that federal computer fraud statutes recognize a similar definition of damage, as do many states' computer crimes. For example, under 18 U.S.C. §1030, damage to a computer

3

includes "any impairment to the integrity or availability of data, a program, a system, or information." 2000 WL 726789 *2. The *Ingram Micro* court found that the insured alleged property damage because the computer and networking systems "physically lost the programming information and custom configurations necessary for them to function." The court viewed the period of reconfiguration as a period of "physical damage." 2000 WL 726789, *2,4.

As noted above, State Auto made no effort to distinguish *Southeast Mental Health Center, Inc. v. Pacific Insurance Company, Ltd.*, 439 F. Supp. 2d 831 (W.D. Tenn. 2006), because it cannot be distinguished, holding squarely that the insured suffered a "direct physical loss" when data stored on its computer system was lost or corrupted, even though there was no "physical damage" to the computer hardware. In that case, hurricane winds had knocked down power and utility lines, which caused a power outage at the insured's pharmacy. The court held that a policy provision for "direct physical loss of or damage to" the insured's property did not cover lost business related to suspension of operations because the power lines were not located on the insured's property. In essence, the insured's real property was not physically damaged. Despite this, however, the court held that the insured was entitled to coverage for business losses related to computer data lost due to the power outage. The court plainly did not interpret *Ingram Micro* as State Auto attempts to frame it. Citing *Ingram Micro* as persuasive authority on the issue, the *Southeast Mental Health* court concluded that loss of computer data was a form of "physical damage" to the pharmacy computer which would trigger coverage

under the policy, holding that "the corruption of the pharmacy computer constitutes "direct physical loss of or damage to property." 436 F. Supp. 2d at 837-38.[1]

In apparent recognition of the import on its position of this body of case law holding that a corruption of data on a computer system that impairs its functionality is "direct physical loss" under a first party property policy, State Auto argues, alternatively, that the National Ink & Stitch computers could still be operated, and, thus, were "functional," even though there is no dispute that virtually all of the data and files on the computer server were and continue to be frozen and could not be opened or used, other than those which allowed Plaintiff to operate its screen printing machines, that the computer system now operates more slowly and less efficiently, and that the risk continues that the ransomware virus remains in a hidden file on the server and could be re-activated with a mouse-click. *See Plaintiff's original memorandum at pages 3-5.* The cases cited in Plaintiff's original memorandum establish that loss of functionality of the system does not require it to be totally or permanently inoperable. *See, e.g., Wakefern*, 406 N. J. Super. at 543-44 ["We find no basis in the language of the Liberty policy . . . to require that the physical damage of the power source be permanent. We therefore cannot agree with the trial court's conclusion that 'the definition of "physical damage" cannot be extended in this case to include the temporary loss of use due to a power interruption because the property resumed its former use or function as soon as the power was restored,

---

[1] Similarly, although State Auto asserts that *Ashland Hospital Corporation v. Affiliated FM Insurance Company*, 2103 WL 4400516 (E.D. Ky. 2013), and *Wakefern Food Corporation v. Liberty Mutual Fire Ins. Co.*, 406 N.J. Super. 524 (2009), are consistent with *Ward*, they are not. The point in *Ashland* was that the corruption of data caused the computer system to be less reliable, thereby constituting "direct physical loss." In *Wakefern*, the court ruled that the term "direct physical loss," which, as here, was not defined in the policy, was ambiguous and, thus, could include loss of functionality due to interruption in the insured business' power supply even though the business' own electrical grid was not physically damaged.

and its value was not diminished.'"]; *Southeast Mental Health Center*, 439 F. Supp. 2d 831 [finding that "physical damage" could include loss of functionality even if the affected equipment remained intact]; *Ashland Hospital Corp*, 2013 WL 4400516 *6 ["[T]he Court declines Defendant's invitation to interpret the phrase 'direct physical loss or damage' as requiring proof that the DMX4 permanently lost its ability to function." Loss of its reliability was sufficient]. *See also cases cited and discussed in Wakefern*, 406 N.J. at 542-44.

Here, the undisputed material facts demonstrate that National Ink & Stitch's computer system could not safely be used for a time period after the ransomware attack until security systems had been installed, that it continues to be slower and less efficient, that virtually all of the data and files on the server at the time of the attack continue to be inaccessible and that there is a significant potential that the same virus continues to exist on the server with the risk of re-infection, the "ticking time bomb" described in *Ashland Hospital*, 2013 WL 440516 at *7. Based on the authorities discussed above, this Court should hold that the effects of the ransomware attack on National Ink & Stitch's computer system, and its resulting loss of functionality and reliability, is a "direct physical loss" to that computer system, as that term is used in State Auto's policy.

    **B.**    **In the alternative, the undisputed corruption of and damage to the data, files and software installed in the computer file server at the time of the ransomware attack is a "direct physical loss" to tangible property.**

State Auto must concede that, if computer data, software, and computer files are, themselves "tangible property," contrary to the holding in *Ward*, then National Ink & Stitch suffered a "direct physical loss" of its data, software, and files in the ransomware attack. This

is likely why State Auto made no effort to distinguish or explain away the cases cited in Plaintiff's original motion that so hold, including the Fourth Circuit's unreported decision (based on Virginia law) in *NMS Services Incorporated v. The Hartford*, 62 Fed. Appx. 511, 514 (4th Cir. 2003), in which the Court reversed a "no coverage" finding by the district court and held that a former employee who hacked insured's computer system and deleted data caused covered damage to the computer system. Judge Widener's concurring opinion was even more to the point: "My concurrence is dependent on the fact that, when the employee erased the data on NMS's computers, this erasure was in fact a 'direct physical loss' under the requirements of the policy." 62 Fed. Appx. at 515 (concurring). Judge Widener expressly considered the data, itself, to be tangible: "Indeed, a computer stores information by the rearrangement of the atoms or molecules of a disc or tape to effect the formation of a particular order of magnetic impulses, and, a 'meaningful sequence of magnetic impulses cannot float in space.'" *Id., quoting Comptroller of the Treasury v. Equitable Trust Company*, 296 Md. 430, 484, 464 A. 2d 248 (1983).[2] Similarly, State Auto has made no effort to distinguish *Landmark American Insurance Company v. Gulf Coast Analytical Laboratories, Inc.*, 2012 WL 1094761 *4 (M.D. La. 2012), which held that computer data "has physical existence, takes up space on the tape, disc, or hard drive, makes physical things happen, and can be perceived by the senses," and, thus, could itself suffer "direct physical loss or damage." Nor does State Auto dispute that its own policy includes data and software as "Covered Property" capable of suffering "direct physical loss."

---

[2] Plainly, Judge Widener considered *Equitable Trust* to support the proposition that computer data was "tangible," contrary to State Auto's efforts to construe that decision otherwise.

7

There are two lines of authorities with respect to whether and under what circumstances loss of or damage to computer data and software will constitute a "direct physical loss" as that term is used in a first party property/business policy. *Ward* stands for the bright-line rule that computer data is "information," not "property," and, thus, cannot suffer "direct physical loss." In addition to being inconsistent with State Auto's own policy language, this position was described as "archaic" in *Ingram Micro*, 2000 WL 726789 *3:

> Lawmakers around the country have determined that when a computer's data is unavailable, there is damage; when a computer's services are interrupted, there is damage; and when a computer's software or network is altered, there is damage. Restricting the Policy's language to that proposed by American [that there was no "physical damage" if the damage was to software or data] would be archaic.

As the cited cases demonstrate, electronic data can be manipulated, altered, and changed and is used as a substitute for paper records, so that changes to or destruction of computer data should, logically, be considered to constitute physical damage. This is consistent with the ever-increasing importance of computer-stored data to the operation of businesses and the reasonable expectations of an insured when obtaining first-party coverage for such a business. *Ashland*, 2013 WL 4400516 * ["[T]he insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation," holding the "direct physical loss" was ambiguous and, thus, damage was covered.] (internal quotation omitted).

## C. Conclusion.

For the reasons set forth above, and in National Ink & Stitch's initial memorandum in support of its motion for summary judgment, Plaintiff National Ink & Stitch is entitled to a declaratory judgment, as a matter of law, that the ransomware attack caused "direct physical loss" to its "Covered Property," as those terms are used in the State Auto policy.

                                                   /s/ *Kathleen M. McDonald*
                                        Kathleen M. McDonald
                                        Federal Bar No. 00764
                                        Kerr McDonald, LLP
                                        111 South Calvert Street, Suite 1945
                                        Baltimore, Maryland 21202
                                        (410) 539-2900
                                        (410) 539-2956 (FAX)
                                        kmcdonald@kerrmcdonald.com

                                        *Attorney for Plaintiff National Ink and Stitch, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of December, 2019, National Ink & Stitch, LLC's, memorandum in reply to State Auto's opposition to National Ink & Stitch, LLC's cross-motion for summary judgment was e-filed and were served, by e-mail and U.S. Mail, on the following:

Matthew Malamud, Esquire
Timony Knox, LLP
400 Maryland Drive
Fort Washington, PA 19034

*Counsel for Defendant State Auto Property
and Casualty Insurance Company*

　　　　　　　　　　　　　　　　　　　　*Kathleen M. McDonald*
　　　　　　　　　　　　　　　　　　　　Kathleen M. McDonald

M4969.docx